

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVID COHEN, | |
| Plaintiff, | Case No. 09 CIV. 3012 |
| v. | |
| SCOTT GREENBERG and GLOBAL BEEHIVE, | JUDGE CASTEL |
| Defendants. | |

### COMPLAINT

### THE PARTIES

1.      David Cohen ("Cohen" or "Plaintiff") is an individual residing at 19 East Cross Road, Stamford, CT 06907.

2.      Upon information and belief, Scott Greenberg ("Greenberg") is an individual residing in the Borough of Manhattan, New York, New York

3.      Upon information and belief, Global Beehive ("Beehive") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business at 915 Broadway, 15th Floor, New York, New York.

4.      Greenberg and Beehive are at times referred to hereinafter collectively as "Defendants."

1

## JURISDICTION AND VENUE

5.      Subject matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

6.      The Court has personal jurisdiction over Beehive pursuant to at least New York CPLR §§ 301 and 302.

7.      The Court has personal jurisdiction over Greenberg pursuant to at least New York CPLR §§ 301 and 302.

8.      Venue is proper in this Court pursuant to at least 28 U.S.C. § 1391.

## FACTS

### The Agreement

9.      On or about July 3, 2008, Plaintiff entered into a consulting agreement (the "Agreement") with defendant Greenberg to provide various consulting services to Greenberg, who owned various businesses in the media and entertainment industry and was looking for, *inter alia*, strategic and tactical planning relating to the existing businesses and potential new business opportunities.

10.     According to section 3 of the Agreement, Greenberg was to pay Cohen $22,000.00 per month in semi-monthly payments of $11,000 each for his services and reimburse Cohen for his "reasonable and/or pre-approved out-of-pocket expenses" incurred in performing his duties under the Agreement.  The Agreement requires that reimbursement be made within ten business days after Cohen submits the expenses with appropriate supporting documentation.

2

11.     According to section 11 of the Agreement, failure to timely reimburse Cohen constitutes Greenberg's default of the Agreement.

12.     Section 6 of the Agreement provides that, "if a business opportunity emerges beyond the current product services and offerings of Greenberg, or the companies of Greenberg, Greenberg will . . . at his discretion" either "appoint David Cohen as the Chief Executive Officer (CEO) and President of the new entity and convert this Agreement to an Employment Contract that is mutually agreed to by the Parties and to include substantial equity in the new entity or b. pay Consultant a breakup fee of twenty thousand dollars ($20,000) to be paid in addition to the other fees and expenses described above in section 3." (emphasis provided.)

13.     According to section 11 of the Agreement, if opportunities emerge beyond the current product services and offerings of Greenberg and Greenberg fails to meet his obligations as set forth in section 6 of the Agreement, including, but not limited to, converting the Agreement into an employment agreement or providing Cohen with "substantial equity" in any new entity after making Cohen President and CEO, Greenberg is in default of the Agreement.

14.     According to section 9 of the Agreement, any party wishing to terminate the Agreement must provide fourteen days written notice.

15.     Section 11 of the Agreement explicitly provides that Greenberg will be seen as having defaulted on the Agreement if Greenberg fails to comply with the provisions of section 9 of the Agreement requiring Greenberg to provide fourteen days written notice prior to terminating the agreement.

16.     Section 11 of the Agreement also provides that if Greenberg defaults, Cohen may immediately terminate the Agreement, demand full and immediate payment for the entire value of

3

the Agreement as if the relationship survived the entire term of the Agreement, plus the $20,000.00 breakup fee detailed in section 6.b. of the Agreement.

17.    Section 11 also provides that "all materials and finished work product that the Consultant prepares for or delivers to Greenberg become the property of Consultant for immediate use, reproduction, or disclosure as desired by Consultant and all copies, physical or electronic, will be gathered by and returned by Greenberg to Consultant and subsequently all copies in the possession of Greenberg will be destroyed."

## Cohen's Identification of the Global Beehive Opportunity

18.    In or about August 2008, Cohen identified a new business opportunity involving, *inter alia*, the delivery of hosted digital asset management services through the Internet and brought that opportunity to Greenberg.

19.    Greenberg then created a new corporation for the purpose of pursuing the new business opportunity, Global Beehive, and, as required by the Agreement, appointed Cohen as the CEO of Global Beehive rather than paying a breakup fee to Cohen.

20.    Cohen and Greenberg discussed the terms that would be contained in the employment contract.

21.    Cohen and Greenberg agreed upon compensation in the amount of $250,000 plus a bonus of $50,000.

22.    The compensation terms were incorporated into a business plan prepared by Cohen and approved by Greenberg.

23.    The parties agreed that the employment contract would be for one year renewable terms.

4

24.     Cohen and Greenberg also agreed that Cohen would receive health benefits at least as favorable as those being offered to the employees of Greenberg's other companies.

25.     Cohen and Greenberg agreed that the "substantial equity" described above in section 6.a. of the Agreement that would represent Cohen's interest in Beehive would be twenty percent of authorized shares: ten percent of authorized shares to be granted and fully vested immediately, with the remaining ten percent vesting over the following four years; 2.5% vesting after 12 months, then the remaining 7.5% vesting monthly over the next 3 years on a pro rata basis, with an acceleration clause for a change in ownership, sale of equity during fundraising, merger, acquisition, or public offering of the company.

26.     Cohen demanded on repeated occasions that Greenberg provide him with this equity, but Greenberg failed, refused, and/or neglected to do so.

27.     Despite making Cohen the CEO of Beehive, Greenberg failed, refused, and neglected to convert the Agreement to an employment contract or to provide Cohen with any equity in Beehive.

## Greenberg's Improper Termination and Restraint of Cohen

28.     On March 23, 2009, Cohen reported to Beehive's office.

29.     After setting down his belongings, Cohen was summoned into Greenberg's office, at which time Greenberg provided Cohen with a letter stating that Greenberg was terminating the Agreement immediately.

30.     Cohen returned to his office to retrieve his belongings.

31.     Before Cohen had a chance to leave, he was confronted by Greenberg and two of his employees, Muzaffar Ali and Tim Okon, all of whom blocked the exit to Cohen's office while

5

Cohen was still inside and, against Cohen's will, refused to allow Cohen to leave Beehive's offices.

32.     Greenberg is approximately 6'1" tall and weighs approximately 230 pounds. Okon is about 5'10" and weighs approximately 300 pounds.

33.     Despite Cohen's repeated requests to leave, Greenberg told Cohen he could not leave until he gave them his computer.

34.     When Cohen stated he would not turn over the computer, which was his personal computer, Ali stated that Okon could keep Cohen away from the computer while he (Ali) went through the files.

35.     Given the size of Greenberg and Okon, Ali's statement, and the fact that he was outnumbered three to one, Cohen had a reasonable belief that he was not free to leave even though he had expressed his intention to go, and that physical force would be used to prevent him from leaving if he attempted to do so.

36.     Greenberg repeated his demand for the computer, at which time Cohen told Greenberg he should call the police.

37.     It was only after police arrived at Beehive's offices and told Greenberg, Okon and Ali to allow Cohen to leave that Cohen was finally permitted to leave the premises.

## FIRST COUNT

### (Breach of Contract)

38.     Plaintiff repeats and realleges the allegations previously set forth as though set forth fully herein.

39.     Greenberg did not, at any time, convert the Agreement into an employment

6

agreement.

40.     During the relationship between the parties, Greenberg did not grant Cohen any equity in Beehive.

41.     Greenberg has failed to pay Cohen in full the second semi-monthly payment due for March 2009.

42.     Greenberg has not reimbursed Cohen for expenses incurred in the course of performing his duties under the Agreement.

43.     Prior to terminating Cohen, Greenberg did not provide fourteen (14) days written notice.

44.     At all times relevant hereto, Plaintiff performed all duties required under the Agreement.

45.     Greenberg, however, has breached the Agreement by, *inter alia*:

   a.   failing and refusing to convert the Agreement to an employment contract;

   b.   failing to provide Cohen with equity in Beehive as required by the Agreement;

   c.   failing to pay Cohen in full the second semi-monthly payment due for March 2009;

   d.   failing to reimburse Cohen for expenses incurred in the course of performing his duties under the Agreement;

   e.   failing to provide Cohen with fourteen days' notice of cancellation of the contract.

46.     Plaintiff has been injured as a result of Greenberg's breach of the Agreement.

7

## SECOND COUNT

### (Declaration that all work product belongs to Cohen)

47. Plaintiff repeats and realleges the allegations previously set forth as though set forth fully herein.

48. In accordance with section 11 of the Agreement if Greenberg defaults, "all materials and finished work product that [Cohen] prepares for or delivers to [Defendants] become the property of [Cohen] for immediate use, reproduction, or disclosure as desired by [Cohen]"; and "all copies, physical or electronic, will be gathered by and returned by [Defendants] to [Cohen] and subsequently all copies in the possession of [Defendants] will be destroyed."

49. Defendant, however, has defaulted on the Agreement by, *inter alia*:

    a. failing and refusing to convert the Agreement to an employment contract;

    b. failing to provide Cohen with equity in Beehive as required by the Agreement;

    c. failing to pay Cohen in full the second semi-monthly payment due for March 2009;

    d. failing to reimburse Cohen for expenses incurred in the course of performing his duties under the Agreement;

    e. failing to provide Cohen with fourteen days' notice of cancellation of the contract.

8

50. Thus, as a result of Greenberg's default and in accordance with section 11, all materials and finished work product are the property of Cohen and Greenberg must destroy all copies of any materials or work product prepared by Cohen in his possession.

51. Cohen has prepared a substantial amount of finished work product that was delivered to Defendants, including but not limited to a business plan (*i.e.* pitchbook, business plan, financial models, letter to the investor, and other materials that may be considered to constitute part of a business plan) delivered to Happenstance, LLC, and potentially others, for the purpose of being distributed to multiple investors in an effort to raise $10 million in capital, business plan provided to Gerald Werdann and/or the accounting firm of Mr. Werdann, and several presentations to Signiant, a vendor of software to Beehive, explaining the Beehive business strategy and plan.

52. Defendant has not returned any of Cohen's material or work product and wrongfully continues to use it for his and his companies' purposes.

53. Cohen will be harmed by Greenberg's continued use of Cohen's materials and work product.

## THIRD COUNT

### (Injunctive Relief)

54. Plaintiff repeats and realleges the allegations previously set forth as though set forth fully herein.

55. In accordance with the Agreement, upon Greenberg's default, all rights and ownership in any material or work product prepared by Cohen became Cohen's property.

9

56.     There is no adequate remedy at law if Greenberg continues to use Cohen's materials and work product.

57.     Cohen will be irreparably harmed by Greenberg's continued use of Cohen's materials and work product.

## FOURTH COUNT

### (Injunctive Relief)

58.     Plaintiff repeats and realleges the allegations previously set forth as though set forth fully herein.

59.     Cohen and Defendant agreed that the "substantial equity" as set forth in section 6 of the Agreement that would represent Cohen's interest in Beehive would be twenty percent of authorized shares: ten percent of authorized shares to be granted and fully vested immediately, with the remaining ten percent vesting over the following four years; 2.5% vesting after 12 months, then the remaining 7.5% vesting monthly over the next 3 years on a pro rata basis, with an acceleration clause for a change in ownership, sale of equity during fundraising, merger, acquisition, or public offering of the company.

60.     Cohen demanded on repeated occasions that Defendant provide him with this equity, but Defendant failed, refused, and/or neglected to do so.

## FIFTH COUNT

### (Breach of Covenant of Good Faith and Fair Dealing)

61.     Plaintiff repeats and realleges the allegations previously set forth as though set forth fully herein.

62.     Implied in the Agreement was a covenant of good faith and fair dealing.

10

63. Pursuant to this covenant, Greenberg had a duty to perform the duties required of him in a commercially reasonable manner.

64. On March 22, 2009, Cohen sent Greenberg a message telling Greenberg that the conversion of the Agreement to an employment contract was long overdue, which was something Greenberg had acknowledged in at least one prior conversation he had with Cohen, and Cohen wanted to finalize the process.

65. In response, on Monday March 23, 2009, Greenberg summarily dismissed Cohen from Beehive, purporting to cancel the Agreement without providing Cohen with the requisite fourteen days' notice.

66. Greenberg breached his duty under the covenant of good faith and fair dealing by, among other things, failing, refusing, and/or neglecting to provide Cohen with an employment contract within a reasonable period of time after appointing him CEO of Beehive; as well as by terminating Cohen's services in response to Cohen's request that Greenberg live up to his obligations under the Agreement.

67. As a direct, proximate, and foreseeable result of Greenberg's actions, Plaintiff has sustained injury.

## SIXTH COUNT

### (false imprisonment against Greenberg)

68. Plaintiff repeats and realleges the allegations previously set forth as though fully set forth herein.

69. On March 23, 2009, Greenberg, along with two of his employees, prevented Cohen, despite Cohen's repeated requests to leave, from exiting the Beehive offices.

11

70.    Cohen reasonably believed that he was not free to leave even though he had expressed his intention to go, and that physical force would be used to prevent him from leaving if he attempted to do so.

71.    By orchestrating and approving the actions of himself and two employees, Greenberg intentionally created a situation in which Cohen was restrained and imprisoned against his will and falsely held.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment:

a. awarding Plaintiff damages adequate to compensate Plaintiff for Defendants' breach of the Agreement;

b. awarding Plaintiff damages for failing to convert the Agreement into an employment agreement including entering an order requiring Defendants immediately to issue Cohen ten percent of the authorized stock of Beehive; to grant Cohen stock options for another ten percent of the authorized stock of Beehive to vest in equal amounts over the next four years–accelerating if a change in ownership, sale of equity during fundraising, merger, acquisition, or public offering of the company takes place;

c. declaring that all documents, material and work product prepared by Cohen are Cohen's property;

d. entering an order requiring Greenberg and Beehive to recall all documents, materials or work product prepared by Cohen that were distributed to third parties, as well as all documents in possession of Greenberg or any of his companies and to return same to Cohen;

e. preventing Defendants from using Cohen's documents in the future;

f. awarding monetary damages for Greenberg's false imprisonment of Cohen;

g. awarding Cohen his costs and attorney fees;

h. awarding Plaintiff such other and further relief as this Court deems just and proper.

12

Dated: March 27, 2009                    David Cohen


By _____
       Stephen J. Vitola (SV-0481)
       604 Hope Street, #2
       Stamford, CT 06907
       (203) 209-1115
       svitola@snet.net

       *Attorney for Plaintiff David Cohen*